**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **GURUMD, LLC** | § | |
| | § | **CIVIL ACTION NO.  6:21-cv-643** |
| | § | |
| **v.** | § | |
| | § | |
| **SUPERIOR HEALTHPLAN, INC.** | § | |

---

**PLAINTIFF'S ORIGINAL COMPLAINT**
**AND JURY DEMAND**

---

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW PLAINTIFF GURUMD, LLC ("Plaintiff" or "GuruMD") complaining of Defendant Superior HealthPlan, Inc. ("Defendant" or "Superior") and files this Plaintiff's Original Complaint ("Complaint") and in support thereof, and in support thereof would respectfully show the Court as follows:

<u>**PARTIES**</u>

1.     GuruMD, LLC is a Texas limited liability company with its principal place of business in Austin, Texas.

2.     Superior HealthPlan, Inc. is a corporation with its principal place of business in Austin, Texas.

## JURISDICTION AND VENUE

3.      Jurisdiction is proper in this district pursuant to 28 U.S.C. § 1331 because GuruMD asserts a cause of action under federal law pursuant to the Defend Trade Secrets Act ("DTSA"), Pub. L. No. 114-153, 130 Stat. 376, which was passed into law on May 11, 2016.

4.      Venue is proper in this district under 28 U.S.C. § 1391 (b) and (c) based on the following:

   a.  Defendant Superior is a corporation organized under the laws of the State of Texas.

   b.  Defendant Superior conducts, engages in, and carries on business within the State of Texas and in the Western District of Texas; and

   c.  The alleged harm and breaches occurred, among other places, in Western District of Texas and Waco Division.

## FACTUAL BACKGROUND

I.      **GuruMD's Specialized Software, Expansion and Development of Risk Assessment Processes**

5.      GuruMD, LLC was founded by Dr. Clinton Osborn and Kassey Burney FNP-C in 2017 with the intent to independently develop specialized software and in the healthcare services space.  Although GuruMD is located in Austin, Texas, software services are not bound by traditional geographic limitations and their intent was to utilize its software nationwide.

6.      Since its inception, GuruMD has developed an unparalleled and unique software capable of handling over 100,000 patient encounters per day, expedited billing compatible with insurance systems and electronic medical records systems.  Rather than license the software for

widespread commercial use, GuruMD has grown organically providing healthcare services to patients throughout Texas and across the United States.

7.      GuruMD quickly identified the effectiveness and value it could provide in the risk adjustment healthcare space through the application of its proprietary software platform and business processes.   At the time, GuruMD was unaware of any other healthcare providers utilizing this type of software or business process to close gaps in care.

8.      Accordingly, GuruMD developed a tailored program including the utilization of its specialized software designed to keep managed care organizations competitive in the marketplace while delivering appropriate healthcare to its patients.  GuruMD's model and processes were unique, proprietary, and confidential.

## II.    GuruMD's Relationship with Superior and Effectiveness of the Proprietary Model

9.      In the Fall of 2019 GuruMD was assigned a limited patient pilot assignment to provide risk assessments for patients under a Superior Health Plan.  The initial pilot was a great success, resulting in unparalleled effectiveness of gap closures by industry standards.

10.     According to information provided by Superior, this gap closure rate was significantly higher than its other vendors.

11.     Without question, the use of its proprietary software platform and proprietary business processes which are designed by GuruMD, was more efficient and effective than any traditional healthcare model in the risk adjustment niche.

12.     Each completed risk adjustment (often referred to as "gap closure") resulted in significantly increased revenue for Superior.  Upon information and belief, the initial pilot program resulted in significant revenue for Superior.

13.     After the pilot's success, to further incorporate GuruMD's proprietary model, Superior expedited the vendor process for GuruMD. Upon becoming a Vendor, GuruMD entered into two much larger agreements with Superior via expanded patient assignments. The total increase in 2020 being approximately 200 times larger than the pilot project in 2019.  GuruMD immediately commenced its risk adjustment campaign and began treating Superior members over the remainder of 2020.

14.     Through the use of its highly effective software platform in tandem with its proprietary processes, GuruMD's expanded contracts were a great success.  According to Superior, GuruMD's services once again had an unparalleled success rate of gap closures.

15.     Due to the unparalleled success in GuruMD's gap closures, upon information and belief it is estimated to have generated tens of millions of additional revenue/savings for Superior in fiscal year 2020.  Based on the success of its program, GuruMD sought an expanded and recurring contract with Superior.

16.     An additional/expanded contract was expected no later than February of 2021.  The negotiations were stalled however due to what Superior claimed to be a necessary audit.

17.     Superior performed an extensive audit of an unusually high percentage of GuruMD patients under the guise that they suspected fraud.  GuruMD fully cooperated with the audit requests of Superior.  According to Superior representatives, there were no fraudulent findings from the audit and GuruMD appeared clear to enter negotiations for an expanded role.

18.     GuruMD was under the impression that a completed audit would result in a negotiated contract.  Nevertheless, Superior refused to negotiate and instead began prying into further details regarding its business processes which have led to GuruMD's effectiveness.

19.     GuruMD has been working tirelessly and using its best efforts to effectuate a mutually beneficial incentive-based contract with Superior.  Unfortunately, following Superior's dilatory approach, repeated delays, attempts to stall, and failure to make meaningful progress towards a deal between GuruMD and Superior, it has become abundantly clear that Superior is not operating in good faith and has no intention of entering a deal with GuruMD.

20.     GuruMD also has reason to believe that Superior has stolen all or portions of its confidential and proprietary information, business model and processes for its own financial gain.

III.    **The Parties Signed a Confidentiality and Non-Disclosure Agreement before the Initial Pilot Program.**

21.     Because GuruMD values its confidential business model and specialized software platform and because GuruMD provided Superior with access to such information, GuruMD and Superior entered into an "Confidentiality and Non-Disclosure Agreement" to protect GuruMD's trade secret and confidential information and legitimate business interests.

22.     On September 27, 2019, Superior agreed to and signed the "Confidentiality and Non-Disclosure Agreement" (the "NDA").   The NDA contains, among other things, reasonable confidentiality, and non-disclosure provisions.

23.     The confidentiality and non-disclosure agreement provides in pertinent part:

Sharing of Information.  Each Party agrees as a condition to obtaining certain confidential, special and unique Information, as defined below, that they will use the Information obtained from the other Party solely for purposes consistent with the Relationship.  The Parties further agree (i) that they will hold the Information provided to them in confidence; and (ii) that they will not disclose the Information provided to them to any other person, except accountants, agents, attorneys, officers, directors, members, managers and employees of the Parties who need to know the disclosed Information for reasons consistent with the Relationship between the Parties.

24.     Confidential Information is defined in part as follows:

"Information" Defined.   For purposes of this Agreement, the term "Information" shall mean and include all information disclosed by either Party or their representatives to the

other or to which either Party has gained access to in the course of their relationship, including, without limitation, information relating to the services, patients, suppliers, financial condition, operations, management and marketing strategics of either Party…

25.     The agreement further compelled compliance by agents and provides:

Compliance by Agents.  The Parties recognize that each of them is responsible for the compliance by its respective accountants, consultants, agents, attorneys, officers, directors, members, managers and employees, and those of all of its affiliated entities, successors and assigns, with the terms of this Agreement.

26.     The mutual obligations and covenants of the NDA remains in effect and is to expire three (3) years from the date that the relationship between the parties ceases.

## IV.   Superior's Theft of GuruMD's Proprietary and Confidential Business Information

27.     GuruMD first became suspicious of a potential theft of its confidential information in the Summer of 2020 when it discovered that a large number of its assigned patient pool had already been contacted by a third-party vendor holding itself out to be GuruMD.

28.     Further inquiry into these previous encounters not only revealed that the imposter company held themselves out to be GuruMD but that they also implemented the exact techniques designed and customized by GuruMD.  GuruMD has never disclosed this information to a third party other than Superior under the protections via the NDA.

29.     When confronted with the concerns of the imposter vender and the idea that GuruMD's confidential information had been stolen, Superior denied any wrongdoing and instead claimed there was simply an overlap between vendor assignments.

30.     Despite its suspicions, GuruMD relied upon Superior's representations that the NDA had not been breached and continued its services on behalf of Superior HealthPlan members with the end goal of obtaining an expanded assignment of patients with a recurring annual contract with Superior.

31.     Nevertheless, GuruMD's unparalleled gap closure success rate was wrongfully disclosed by Superior to its vendor U.S. Medical Management (hereinafter "USMM")—a competing "brick and mortar" home healthcare provider in the risk assessment industry.

31.     Upon information and belief, Superior is a wholly owned subsidiary of Centene Corporation (hereinafter "Centene") which holds itself out to be the largest Medicaid managed care organization in the United States.  USMM is also believed to be a subsidiary of Centene Corporation.

32.     Without question, Centene Corporation's financial interests are misaligned with that of GuruMD and a motivation existed for its wholly owned subsidiary vendors to obtain gap closure rates consistent with those obtained through the innovative services provided by GuruMD.

33.     The improper disclosure of GuruMD's successful utilization of its specialized software and unique approach to risk adjustments by Superior to its vendor created a frenzy within the USMM organization.

34.     Upon information and belief, Centene representatives were permitted access to the GuruMD information exchanged with Superior and began a campaign to copy or duplicate the GuruMD processes for its own use and for distribution to other vendors.

35.     Superior's ill intent became even more apparent when it refused to negotiate a contract without answers to arbitrary and probing questions about their proprietary business model.

## COUNT I

### Breach of Contract

38.     Plaintiff incorporates the allegations of Paragraphs 1 through 35 as if set out herein verbatim.

39.     The NDA executed by GuruMD and Superior is a valid and enforceable contract supported by valid consideration.

40.     Among other obligations under the NDA, during the period of the relationship between the parties and for a period of three years thereafter, Superior was obligated to hold the confidential information provided to them in confidence.

41.     These restrictions reasonably protect GuruMD's legitimate business interests, competitive advantage, goodwill and innovative ideas, processes and techniques.

42.     GuruMD provided Superior with highly sensitive, confidential and proprietary information for the purposes consistent with the business relationship and GuruMD fully performed its contractual obligations with Superior under a provider agreement with unparalleled integrity and success.

43.     Superior violated the NDA by engaging in the exact action from which they agreed to refrain, namely, the disclosure of its confidential and proprietary business ideas, innovations, engagement programs, software processes and integration processes to third parties including but not limited to its competitors.

44.     Superior has further violated the NDA by disclosing its business relationship and GuruMD's specific effectiveness to competitors in the industry.

45.     GuruMD has suffered and will continue to suffer damages and irreparable harm as a result of Superior's breach of contract, including loss of its business and contractual relationships, diminished value of its confidential information, loss of income, harm to its goodwill and reputation, and harm to its business.

## COUNT II

### Misappropriation of Trade Secrets

46.     Plaintiff incorporates the allegations of Paragraphs 1 through 45 as if set out herein verbatim.

47.     The Texas Uniform Trade Secrets Act. Tex. Civ. Prac. & Rem. Code Ann. § 134A.001, et seq. ("TUTSA"), forbids the misappropriation of trade secrets.  Under the TUTSA, a trade secret mean "information including, but not limited to, a formula pattern, compilation, program, device, method, technique, product, system, or process, design, prototype, procedure, or code that:  (a) derives independent economic value, actual or potential, from not being generally known to, and not being ascertainable by proper means by , other persons who can obtain economic value from its disclosure or use, and (b) is subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6).

48.     Under the TUTSA, misappropriation means "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper mean; or (B) disclosure or use of a trade secret of another without express or implied consent by a person who:  (i) used improper means to acquire knowledge of the trade secret; or (ii) at the time of disclosure  or use, knew or had reason to know that his knowledge of the trade secret was: (a) derived from or through a person who had utilized improper means to acquire it; (b) acquired by mistake or under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (c) derived form or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake."  Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(3).

49.     Certain confidential and proprietary information of GuruMD constitutes trade secrets under the TUTSA, including, but not limited to, its implementation of specialized software in the healthcare risk assessment space, employee training materials, specialized software processes for patient data gathering and implementation, billing processes, engagement processes, medical records collections processes, and software integration processes for effective treatment and risk adjustment reporting.

50.     GuruMD derives economic benefit from the fact that its trade secrets, including those listed herein above are not generally known to individuals or entities outside of GuruMD.

51.     GuruMD takes reasonable measures to protect its trade secrets.  These measures include password-protected databases, confidentiality and non-disclosure agreements, and limitations on dissemination of information on a need-to-know basis.

52.     Superior knew it had a duty to maintain the secrecy of GuruMD's trade secrets due, in part, to its acknowledgement of such under the NDA.

53.     Superior is under a duty not to disclose or utilize misappropriated trade secrets for the purpose of gaining a competitive advantage in the marketplace.

54.     Defendant Superior has improperly acquired, disclosed, and utilized GuruMD's trade secrets without consent of any kind for its own financial gain and or for the financial gain of its parent company Centene Corporation, its other vendors USMM and others.

55.     Defendant Superior's actions constitute misappropriation in violation of the TUTSA, and also constitute willful misappropriation.

56.     GuruMD has suffered damages and irreparable harm as a result of Superior's breach of the TUTSA, including loss of income, loss of customers and employees, harm to its goodwill and reputation, and unfair reduction in its competitive advantage.

57.     GuruMD is entitled to actual damages Superior and attorney's fees.

## COUNT III

**Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836**

58.     GuruMD repeats and re-alleges the allegations contained in Paragraphs 1-57 above, as if fully set forth herein.

59.     GuruMD operates its business in interstate commerce across the United States.  The trade secrets misappropriated by Superior are related to, and intended for use in, interstate commerce.

60.     As set forth above, Superior improperly disclosed and/or used GuruMD's trade secrets, thereby misappropriating GuruMD's trade secrets pursuant to 18 U.S.C. § 1839.  This includes, but is not limited to, GuruMD's implementation of specialized software in the healthcare risk assessment space, employee training materials, specialized software processes for patient data gathering and implementation, billing processes, engagement processes, medical records collections processes, and software integration processes for effective treatment and risk assessment reporting.

61.     Superior disclosed or used GuruMD's trade secrets without GuruMD's consent, and Superior knew or had reason to know that the information was derived from or through a person who had used improper means to acquire the trade secret – through misrepresentation and/or breach of duty to maintain secrecy – and/or under circumstances giving rise to a duty to maintain the secrecy of the trade secret (i.e., having signed an NDA).

62.     The aforementioned information qualifies as "trade secrets" under the DTSA, as defined in 18 U.S.C. § 1839.

63.     Furthermore, GuruMD has taken reasonable measures to keep such information secret by, among other things, requiring an executed confidentiality agreement prior to accessing the information.

64.     The trade secrets misappropriated by Superior include highly confidential and proprietary business information which required substantial resources, time and investment by GuruMD to create and/or develop and derive independent economic value from not being generally known to, or readily ascertainably by, those who can obtain economic value from use of this information, such as GuruMD's competitors.

65.     Superior's misappropriation of GuruMD's trade secrets has caused GuruMD to suffer harm, including but not limited to the loss of further business opportunities.

66.     Superior's actions constitute willful and malicious misappropriation of GuruMD's trade secrets pursuant to the DTSA. GuruMD therefore is entitled to exemplary damages under 18 U.S.C. §1836(b)(3)(D) in an amount up to two times the damages awarded under 18 U.S.C. §1836(b)(3)(B).

67.     GuruMD is entitled to full compensatory and consequential damages, including damages pursuant to 18 U.S.C. §1836(b)(3)(B) for actual loss and any unjust enrichment caused by the misappropriation, as well as attorneys' fees, costs, and expenses, and such other relief as the Court deems just and proper.

68.     Accordingly, GuruMD demands judgment against Superior for compensatory and exemplary damages, prejudgment interest, an award of GuruMD's reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3), and such other relief as the Court deems just and proper.

**PRAYER**

WHEREFORE, GuruMD respectfully demands that judgment be made and entered in its favor against Superior as follows:

a. Require Superior to make restitution to GuruMD, and award GuruMD judgment against Superior in an amount to be determined at trial but now believed to be millions of dollars, plus all interest and costs as allowed by law, for Superior's unjust enrichment at GuruMD's expense;

b. Require Superior to account to GuruMD for all revenues and profits derived from their misappropriation of GuruMD's trade secrets;

c. Award GuruMD actual, liquidated, and/or compensatory damages in an amount to be determined at trial but now believed to be millions of dollars against Superior misappropriation of GuruMD's trade secrets and confidential information;

d. Award GuruMD exemplary and/or punitive damages;

e. Enter a permanent injunction enjoining Superior from further violating the NDA and from misappropriating GuruMD's trade secrets;

f. Award GuruMD prejudgment interest against Superior for the claims asserted against it herein;

g. Award GuruMD all costs and attorneys' fees it incurs in the prosecution of this lawsuit; and

h. Award GuruMD such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

GuruMD hereby demands a jury trial.

Dated: June 21, 2021

Respectfully submitted,

**WINSTON & STRAWN LLP**


By:      */s/ Rex A. Mann*
          Rex A. Mann
          TX Bar No. 24075509
          rmann@winston.com
          John T. Sullivan
          TX Bar No. 24098485
          jsullivan@winston.com
          2121 North Pearl Street, Suite 900
          Dallas, TX 75201
          (214) 453-6500 – Telephone
          (214) 453-6400 – Facsimile

          **FAIRCHILD, PRICE, HALEY &
          SMITH L.L.P.**

          W. Wade Flaswoski
          TX Bar No. 24055482
          wflasowski@fairchildlawfirm.com
          Clayton H. Haley
          TX Bar No. 08738460
          chaley@fairchildlawfirm.com
          P.O. Drawer 631668
          Nacogdoches, TX 75963
          (936) 569-2327 (telephone)
          (936) 5697932 (facsimile)

          *COUNSEL FOR PLAINTIFF GURUMD, LLC*